**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                          |   |                 |              |
|--------------------------|---|-----------------|--------------|
| IVAN FICKEN *et al.*,    | : |                 |              |
|                          | : |                 |              |
| Plaintiffs,              | : |                 |              |
| v.                       | : | Civil Action:   | 04-1132 (RMU) |
|                          | : |                 |              |
| CONDOLEEZZA RICE,[1]     | : | Document Nos.:  | 12, 23       |
| Secretary of State *et al.*, | : |             |              |
|                          | : |                 |              |
| Defendants.              | : |                 |              |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART THE DEFENDANTS'
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

This matter is before the Court on the Secretary of State's motion to dismiss or, in the alternative, for summary judgment.  The *pro se* plaintiffs bring this case claiming employment discrimination, age discrimination, retaliation, negligent handling of discrimination claims, violation of international covenants, breach of implied contracts, emotional distress and humiliation.  For the reasons set forth below, the court grants the defendants' motion in part and denies it in part.

## II.   BACKGROUND

Plaintiff Ivan Ficken and plaintiff Cyprian Ivanof, appearing *pro se*, fail to draft a simple notice pleading.  Rather than filing a short and plain statement of his claims as Rule 8(a) of the

---

[1]     Pursuant to Fed. R. Civ. P. 25(d), the current Secretary of State is substituted for her predecessor, former Secretary Colin Powell.

1

Federal Rules of Civil Procedure requires, the plaintiffs submitted a 224-page complaint in 281 sequentially numbered paragraphs.  Statements therein include the plaintiffs' comments and musings, most of which are wholly irrelevant and fail to serve the purposes of Rule 8(a). Notwithstanding the plaintiffs' lengthy and disorganized *pro se* complaint, the court discerns the following relevant factual allegations.

## A.    Foreign Service Written Exam

The plaintiffs explain that candidates for the State Department's Foreign Service undergo a written examination, the Foreign Service Written Exam ("FSWE").  Compl. ¶ 10.  The exam, which is developed and graded by defendant ACT, includes both multiple choice questions and essay questions.[2]  *Id.*  If a candidate scores less than 158 points on the multiple choice portion of the test, the application process ends for that year's cycle of testing.  *Id.* ¶¶ 10, 13.  If a candidate scores 158 points or more, his essays are graded.  *Id.*  If the candidate receives a passing score on his essays, he proceeds to the next stage of the selection process.  *Id.* ¶10.

In November 2000, Ficken took the FSWE.  Compl. ¶ 11.  At that time, Ficken was 57 years of age.[3]  *Id.*  He did not complete the biographic information portion of the multiple choice test within the allotted time.  *Id.* ¶ 12.  Ficken scored less than 158 points on the multiple choice test, thus terminating the application process for that year.  *Id.* ¶ 13.

---

[2]    According to its website, ACT is a "not-for-profit organization that provides more than a hundred assessment, research, information, and program management services in the broad areas of education and workforce development."  http:\\act.org.  According to the plaintiffs, ACT "developed and constructed the questions and testing procedures which comprise the [Foreign Service Written Exam ("FSWE")] which the Office of Recruitment for the Foreign Service, a branch of the United States Department of State, utilizes to screen and recruit personnel for hiring into the Foreign Service."  Compl. ¶ 4.

[3]    According to Ficken, the other individuals taking the test were in their early to mid-20s. Compl. ¶ 11.

Ficken attributes his failing score to the strict time limits imposed for completion of the biographic information portion of the multiple choice test.[4]  Compl. ¶ 14.  He filed a discrimination claim against the State Department alleging that the November 2000 FWSE was "inherently age discriminatory."  *Id.*  He asserted that an older person's greater life experiences made it impossible to respond fully to the questions posed because responses required not only a multiple choice selection but also supporting "documentation."  *Id.* ¶¶ 2, 14.  The parties entered into an informal resolution of the discrimination claim, pursuant to which the State Department allowed Ficken to take the FWSE's biographical information section again in August 2001, and allotted 30 minutes to complete the portions of the test that he was unable to complete initially.[5]  *Id.* ¶¶ 15, 20.  Ficken passed the multiple choice portion of the test, but failed his essay portion of the test.  *Id.* ¶ 16.

Ficken made arrangements to take the FSWE in September 2001 in Bucharest, Romania.  Compl. ¶¶ 19-20.  He passed both the multiple choice and essay portions of the test, then

---

[4]    Ficken stated that the response to each biographic information section question "required the candidate to list certain documented or verifiable written answers in the test booklet to support the multiple choice answer chosen, which written answers required a candidate to review his life's history to isolate which experiences or events would be most appropriate to list."  Compl. ¶ 12.  He "could not believe that he would be penalized simply for not being able to finish all of the questions."  *Id.*

[5]    The informal resolution granted Ficken a "reasonable accommodation to complete the Biographic Information Questionaire (BIQ) portion of the [FSWE]."  Defs.' Mot., Ex. 1 (Informal Resolution).  It provided:
Mr. Ficken will be provided with his original test booklet and answer sheet and allowed 30 minutes to complete the portions of the BIQ that he was unable to complete when he originally took the FSWE on November 29, 2000 . . . If Mr. Ficken's total score is at or above the passing score for the multiple-choice section of the FSWE, Mr. Ficken's essay from the November 29, 2000 FSWE will be scored on an expedited basis . . . If Mr. Ficken passes the FSWE, he will be scheduled for an Oral Assessment on an expedited basis.
*Id.*

proceeded to the Oral Assessment and Structured Interview phases of the application process. *Id*. ¶¶ 21, 24.

The first exercise of the Oral Assessment requires candidates, working in groups, to complete assigned tasks within a certain amount of time. *Id*. ¶¶ 29-30. Candidates were to brief other group members on the project, advocate for the project's full funding, and, lastly, enter "a negotiation phase during which limited funding constraints imposed restrictions upon which projects could be totally or partially funded." *Id.* ¶ 29. Ficken's project included the costs of "providing 'Human Rights sensitivity training' for senior military officials in an underdeveloped country who were primarily responsible for the abuses which the country had in the area of Human Rights." *Id.* He attributed his "particularly low grade" in this exercise to "his failure to effectively advocate for the project which he was given (and which his many years of experience in the real world told him, beyond any doubt, would be a waste of money)." *Id.* ¶ 30.

During the structured interview portion of the examination, in response to an examiner's question about work history, Ficken explained that he had not worked for more than 10 years before submitting his application. Compl. ¶ 31. He attributed his spotty work history to his "retaliatory dismissal" in 1987 from "his job at the [Small Business Administration] due to illegal retaliation from an office director against whom Ficken had filed multiple EEO and retaliation complaints." *Id.* Although Ficken did not complete a timed written exercise involving both a case management study and a quantitative analysis section, he received high scores in both. *Id.* ¶ 33. On April 2, 2002, the defendants discontinued consideration of Ficken's candidacy. Defs.' Mot., Ex. (Performance Summary Report).

Ficken filed two additional discrimination complaints, one alleging that the State Department did not grade his 2000 FSWE essays properly, and another "concerning the age

discriminatory and retaliatory nature of how his Oral Assessment was graded."  Compl. ¶ 160.

The complaints were consolidated.  *Id.*  The State Department issued a final agency

determination on Ficken's discrimination claims, which the plaintiffs received on January 23,

2004.  Compl. ¶¶ 85, 160.

## B.   American International School in Bucharest

Ficken alleges that he sought enrollment for son, Cyprian Ivanof ("Ivanof") in the

American International School of Bucharest ("AISB") in or about September 2001.  Compl. ¶

114.  Because Ficken could not afford the tuition, he states that he sought a full scholarship or

greatly reduced tuition.  *Id.* ¶¶ 114-17.  When the school rejected Ficken's alternative tuition

proposals, he appealed, unsuccessfully, to AISB's Board of Directors.  *Id.* ¶¶ 121-23.  The

United States Embassy's Deputy Chief of Mission is a member of the AISB's Board of

Directors.  *Id.* ¶¶ 121-23.

For the 2002-2003 school year, Ficken enrolled Ivanof at the Bucharest Christian

Academy, a Romanian school, with allegedly disastrous non-academic consequences to Ivanof.[6]

Compl. ¶¶ 125-26.  Though its curriculum was less rigorous than AISB's curriculum, Ivanof

nevertheless fared well academically at this school.  *Id.* ¶¶ 134-3.

Ficken reapplied his son with AISB for the 2003-2004 adacemic term.  *Id.* ¶¶ 138-153.

Ficken was informed that scholarships would not be available for eleventh grade students for the

---

[6]      Ivanof allegedly suffered a "daily regimen of ridicule, threats of violence, getting beat up
and psychological harassment for no apparent reason other than the fact that he held
American citizenship and consequently was alternately perceived as being rich because of
that, interspersed with the same harassment due to the reality of Plaintiffs being poor."
Compl. ¶ 126.

2004-05 school year, rendering Ivanof ineligible for scholarship consideration. *Id.* ¶ 155. For this reason, AISB rejected the plaintiffs' 2003-04 scholarship application. *Id.* ¶¶ 138, 153.

Ficken links the alleged discrimination by the State Department and ACT to Ivanof's education. Ficken alleges that had he not "suffered discrimination, retaliation and deceptive contractual advertising of State Department employment. . . and had been able to receive an appointment to the Foreign Service, Plaintiff Ivanof would have been able to attend an American based school." Compl. ¶ 213. Rather, he alleges that "due to [Ficken] not being employed by the State Department's Foreign Service . . . Ivanof had to attend a Romanian school," learning nothing, suffering ridicule and harassment from his schoolmates, and later attending a school without "the same internationally high reputation" as the AISB. *Id.* ¶ 214.

The plaintiffs demand declaratory and injunctive relief. Ficken seeks compensatory and punitive damages, front pay, back pay, retirement benefits and interest with respect to his discrimination claims. Compl. ¶¶ 266-73. In addition, the plaintiffs demand Ivanof's admission to the AISB for the current and future school years, and damages associated with the school's alleged wrongful refusal to enrol Ivanof. *Id.* ¶¶ 274-76.

## II.   DISCUSSION

### A.   The Defendants' Motion to Dismiss

#### 1.   Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing

FED R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice

pleading is made possible by the liberal opportunity for discovery and the other pre-trial

procedures established by the Rules to disclose more precisely the basis of both claim and

defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of

his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14

(2002), or "plead law or match facts to every element of a legal theory."  *Krieger v. Fadely*, 211

F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

     Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a

complaint for failure to state a claim unless the defendant can show beyond doubt that the

plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Warren*

*v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040.

Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual

allegations – including mixed questions of law and fact – as true and draw all reasonable

inferences therefrom in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67

(D.C. Cir. 2003); *Holy Land Found. for Relief & Development v. Ashcroft*, 333 F.3d 156, 165

(D.C. Cir. 2003); *Browning*, 292 F.3d at 242.  While many well-pleaded complaints are

conclusory, the court need not accept as true inferences unsupported by facts set out in the

complaint or legal conclusions cast as factual allegations.  *Warren*, 353 F.3d at 39; *Browning*,

292 F.3d at 242.

     "[H]owever inartfully pleaded," a *pro se* complaint is held to "less stringent standards

than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Accordingly, *pro se* plaintiffs are not required to use specific legal terms or phrases, and the

Court "will grant plaintiffs the benefit of all inferences that can be derived from the facts

alleged." *Kowal v. MCI Communications Corp.* 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing

*Conley v. Gibson*, 355 U.S. at 45-46).

> **a.    The Court Denies the Defendants' Motion to Dismiss as to the**
> **Plaintiffs' Employment Discrimination Claims**
> **(Counts I, II, IV, V, and VII)**

The plaintiffs make essentially two employment discrimination claims: age

discrimination and retaliation.  First, the plaintiffs asserts that the State Department, in

conjunction with its agent ACT, discriminated against Ficken on the basis of age.  Compl. ¶¶

183, 199.  In addition, the Foreign Service application process allegedly is a "system of tests,

exercises and games which discriminate against older, more experienced workers"  Compl. ¶ 51.

The Oral Assessment, for example, is "Age Discriminatory by design" because "[i]t was

specifically designed to cancel out any experience which an older person might have."  *Id.*

Second, the plaintiffs allege that the State Department terminated his Foreign Service application

in retaliation for having filed an age discrimination claim with respect to the 2000 FSWE.

Compl. ¶¶ 63, 190, 199.

The defendants move to dismiss these counts on the ground that Ficken fails to state a

claim upon which relief can be granted.  *See* Defs.' Mot. at 11-16.  The defendants argue that the

plaintiffs' complaint does not contain a short and plain statement sufficient to put the defendants

on fair notice of the plaintiffs' age discrimination claim.  Even if Ficken had adequately stated an

age discrimination claim the defendants argue, their compliance with the Informal Resolution

undermines the plaintiff's age discrimination and retaliation claims.  The court rejects these

arguments.

A complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.   Fed. R. Civ. P. 8(a).  The court readily agrees with the defendants that the plaintiffs' complaint is neither short nor plain.  It should not be dismissed for failure to state a claim, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)*.*  The court must give the plaintiffs "the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).  By this standard, the plaintiffs' complaint is sufficient.  Ficken's allegation that the defendants discriminated against Ficken on the basis of his age constitutes a claim upon which relief can be granted. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000).

Insofar as the defendants assert compliance with the Informal Resolution as a basis for dismissing the plaintiffs' claims, the motion must be denied.  Before the Court is a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a ruling on which does not test the plaintiffs' likelihood of success on the merits.  Rather, it tests whether the plaintiffs have properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The plaintiffs manage to do so here, and the court denies the defendants' motion to dismiss these claims.

### b.   The Court Grants the Defendants' Motion to Dismiss as to the Plaintiffs' Negligent Handling of Discrimination Complaint Claim (Count III)

Ficken alleges that the State Department's EEO counselors and administrators "negligently failed to follow through with the handling and processing of Ficken's subsequent EEO complaint which alleged that the terms of the August 1, 2001 Informal Resolution had been

violated by breaching the implied contractual agreement to grade ficken's FSWE essay" fairly. Compl. ¶¶177-78.  This claim is not actionable.  The plaintiffs' only viable cause of action under the Title VII and the ADEA is for discrimination.  The statutes "do[] not create an independent cause of action for the mishandling of an employee's discrimination complaints."  *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990), *aff'd*, 946 F.2d 1568 (D.C. Cir. 1991); *See Nelson v. Greenspan*, 163 F. Supp. 2d 12, 18 (D.D.C. 2001) (dismissing claim that the defendant failed to follow proper procedure in the processing of complaints which ultimately resulted in a settlement agreement).  Accordingly, the court dismisses count III for failure to state a claim upon which relief can be granted.

### c.     The Court Grants the Defendants' Motion to Dismiss as to the Plaintiffs' Violation of International Covenants Claim (Counts X and XI)[7]

The plaintiffs seek to hold the Secretary of State liable for AISB's refusal to admit Ivanof at no cost or at reduced tuition.  This action, in the plaintiffs' eyes, amounts to a violation of the United Nations Universal Declaration of Human Rights and the United Nations Convention of the Rights of the Child.  Compl. ¶ 225.  Though the U.N. Declaration may be considered evidence of customary international law, it is not legally binding or self-executing.  *See Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 719 (9th Cir. 1992).  Similarly, the U.N. Convention offers no support for the plaintiffs because it has not been ratified by the United States.  *Flores v. Southern Peru Copper Corp.*, 343 F.2d 140, 165 & n.36 (2d Cir. 2003).  Accordingly, the court grants the defendants' motion to dismiss as to counts X and XI.

---

[7]     The allegations set forth in Count X are asserted against defendant AISB.

### 2.   Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine

11

whether it has jurisdiction over the claim, the court may consider materials outside the pleadings.

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### a.   The Court Grants the Defendants' Motion to Dismiss as to the Plaintiffs' Breach of Implied Contract Claims (Counts I, II, and IV)

Ficken alleges that the Informal Resolution reached with respect to his initial age

discrimination complaint "implied a good faith contractual commitment on the part of ACT and

the Department of State to grade Ficken's essay with the same standard it would have applied

had it been graded with all other exams at they time they arrived in bulk at ACT's headquarters."

Compl. ¶ 164.  He asserts, repeatedly, that the defendants breached that implied contract to his

detriment and the detriment of his son Ivanof.  *Id.* ¶¶ 164-65, 170-71, 183-84, 189-90, 195-96.

The Tucker Act provides the exclusive remedy for contract claims against the

government.  *See Transohio Savs. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609

(D.C. Cir. 1992); 28 U.S.C. § 1491.  It provides that "[t]he United States Court of Federal

Claims shall have jurisdiction to render judgment upon any claim against the United States

founded . . . upon any express or implied contract with the United States, or for liquidated or

unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Court of

Federal Claims, then, has jurisdiction over the plaintiffs' implied contract claim for monetary

relief.[8]  *See Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003) (holding that a claim of

breach of settlement agreement with Department of Agriculture was a contract claim over which

---

[8]     Federal district courts and the Court of Federal Claims have concurrent jurisdiction for claims that do not exceed $10,000.  *See* 28 U.S.C. § 1346(a)(2).  Although the complaint demands no specific dollar amount, Ficken's demand for pay and benefits presumably exceeds $10,000.

the Court of Federal Claims had jurisdiction).  Accordingly, the Court dismisses counts I, II, and IV for lack of subject matter jurisdiction.

> **b.    The Court Grants the Defendants' Motion to Dismiss as to the Plaintiffs' Emotional Distress and Other Tort Claims (Counts VI, VIII, IX, XIII, XV, and XVII)**

Both Ficken and Ivanof bring tort claims against the State Department.  Ficken alleges that the State Department's conduct resulted in "injury to his reputation and career, and emotional distress and humiliation."  Compl. ¶ 192.  The testing process, he alleges, not only "acts to humiliate and degrade the self esteem" of qualified applicants, but also forces them to incur excessive travel expenses in order to take the one-day Oral Assessment.  *Id.* ¶ 206.  Ivanof claims that the State Department's actions resulted in his having "to attend a Romanian school during the 2001 to 2002 school year, during which he learned nothing, . . . and during which time he suffered repeated and continual harassment, ridicule, threats of violence and actual violence perpetrated against his person, which caused him great and continuing emotional distress."  Compl. ¶ 196.  Had Ficken not suffered discrimination, Ivanof further alleges that his school tuition would have been paid in full because he would be a dependent of a Foreign Service officer.  *Id.* ¶ 213.  The defendants' actions, the plaintiffs claim, also caused Ivanof to suffer humiliation and loss of self-esteem because of its alleged liability for AISB's decision not to enroll him or to award him a scholarship.  *Id.* ¶¶ 253, 263.

The court lacks subject matter jurisdiction to entertain the plaintiffs' tort claims.  The Federal Tort Clams Act ("FTCA") grants federal district courts jurisdiction over claims arising

from certain torts committed by federal employees in the scope of their employment.[9]  *See* 28 U.S.C. § 1346.  It does not extend, however, to "[a]ny claim arising in a foreign country."  28 U.S.C. § 2680(k); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004) (holding that "the FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred").

Even if the FTCA were applied to the plaintiffs' tort claims, it bars the plaintiffs from bringing a civil action in federal district court before they have exhausted their administrative remedies under the FTCA.  *McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that the "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies").  Exhaustion occurs after the claimants present their claims to the appropriate federal agency and the agency denies the claim in writing.  *See* 28 U.S.C. §2675(a).  If an agency fails to make a final disposition within six months after the filing of the claim, the plaintiffs may file suit thereafter.  *See id.*  The plaintiffs' failure to exhaust is fatal to their claim, and the defect cannot be cured by amendment of the complaint at a later date.[10]  "Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system."

---

[9]     Only the United States can be a defendant to a claim under the FTCA.  *See* 28 U.S.C. §2679(a); *Cox v. Sec'y of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990).  The court declines to dismiss the FTCA claim on the ground that the *pro se* plaintiffs failed to name the United States as the party defendant.  A defect of this nature could be remedied by amending the complaint.

[10]    The plaintiffs do not allege that they have filed an administrative tort claim.  *See* Pls.' Opp'n at 20, 26.  The State Department has no record of receipt of an administrative tort claim filed by the plaintiffs.  *See* Defs.' Mot., Hartfield Decl. ¶4.

*Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999); *see Schneider v. Kissinger*, 310 F. Supp. 2d 251, 269-70 (D.D.C. 2004) (holding that the plaintiff, who submitted an administrative claim before filing suit, was not allowed to proceed upon filing of amended complaint adding an FTCA claim after formal denial of the administrative claim). Accordingly, the court dismisses counts VI, VIII, IX, XIII, XV, and XVII for lack of subject matter jurisdiction.

### B.    The Defendants' Motion for Summary Judgment

### 1.    Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## 2. The Court Grants the Defendants' Motion for Summary Judgment as to the Plaintiffs' Claims Regarding Ivanof's Enrollment at AISB (Counts XIII- XVII)

Blame for Ivanof's educational situation, according to the plaintiffs, rests with the State Department. The Chair of AISB's Board of Directors is an official at the United States Embassy, and serves primarily to ensure that children of American government employees and other Americans in Romania are given preference in admissions. Compl. ¶¶ 121, 123-124; Pls.' Opp. at 36-38. In addition, the plaintiffs allege that AISB receives an "annual supporting grant and the proportionately large amount of funds which the State Department and/or other U.S. Government agencies continue to contribute to AISB as free tuition for the families of the U.S. Government employees stationed in Romania." *Id.* ¶ 128. The plaintiffs proceed on a theory of *respondeat superior* in an attempt to hold the State Department liable for AISB's decisions not to enroll Ivanof in the school and not to award him a full or partial scholarship.

The links the plaintiffs describe between AISB and the State Department are not sufficient to establish that AISB operates as a government actor. *See Kauffman v. Anglo-American School of Sofia*, No. 89-3419, 1992 WL 200025 at *2-3 (July 30, 1992). The

defendants show that AISB "is a private, independent school and is not controlled or regulated by the Department of State." Defs.' Mot., Miller Decl. ¶ 5.[11]  Although it receives an annual grant from the Department of State, AISB has its own Board of Directors, hires and fires its own employees, and sets its own tuition. *Id.* ¶¶5-7.  Accordingly, the defendants are not liable for AISB's actions under a *respondeat superior* theory. *Kauffman v. Anglo-Am. Sch. of Sofia*, No. 89-3419 (RCL), 1992 WL 200025, *2 (D.D.C. July 30, 1992), *aff'd* 28 F.3d 1223 (D.C. Cir. 1994) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1981).  For this reason, the court grants the defendants' motion for summary judgment.

### 2.    The Plaintiffs' Employment Discrimination Claims

The analytical framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973) applies both to Title VII and ADEA claims. *See, e.g., Hall v. Giant Food Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999) (applying *McDonnell Douglas* framework for Title VII actions to ADEA claim).  The plaintiffs bears the initial burden in a Title VII action to establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802; *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002).  Plaintiffs construct a *prima facie* case of employment discrimination "by establishing that: '(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella*, 284 F.3d at 145 (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).  In this case, the parties agree that the plaintiffs meets the first two

---

[11]    Declarant Keith D. Miller is the Director of the State Department's Office of Overseas Schools, and thus is familiar with the relationship between AISB and the State Department.  Def.'s Mot., Miller Decl. ¶3.

criteria: that Ficken is a member of a protected class (i.e., is over 40 years of age and had engaged in prior EEO activity), and that he suffered an adverse employment action.

If the plaintiffs succeed in making out a *prima facie* case of discrimination, the burden shifts to the defendants to rebut the presumption of discrimination by producing "evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (citation omitted); *See Texas Dep't of Cmty' Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  At this point, the presumption of discrimination generated by the *prima facie* showing drops from the case, and the plaintiffs have an opportunity to present evidence that a factor such as race or age, not the defendants' proffered reasons, was the true reason for the adverse employment action.  *See Burdine*, 450 U.S. at 254-55; *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 761 (D.C. Cir. 2002).  "[T]he relevant inquiry is whether there is sufficient evidence from which a reasonable fact finder could find in favor of the plaintiff, although the trier of fact may still consider the evidence establishing the plaintiff's prima-facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101 (D.D.C. 2002), citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 142-144 (internal quotation marks omitted).

> ### a.    The Court Denies the Defendants' Motion for Summary Judgment as to the Plaintiffs' Age Discrimination Claim

Ficken alleges that he was unable to complete the Biographic Information section of the 2000 FSWE within the time limits allotted.  Compl. ¶ 12.  He attributes this to the extra time it takes candidates who, like him, are older with greater life experience.  *Id.*  While the defendants do not admit that the FSWE discriminates on the basis of age, the parties state that, pursuant to

an Informal Resolution, Ficken was allowed additional time to complete the Biographic

Information section. *Id.*, ¶15.  The defendants argue that the Department's compliance with the

Informal Resolution defeats any inference of discrimination based on age with respect to the

2000 FSWE.  The Court agrees.  Such is not this case, however, with respect to the 2002 Oral

Assessment.  Ficken alleges that the Oral Assessment, too, "discriminates against older and

hence more experienced people."  Compl. ¶ 28.  Compliance with the Informal Resolution does

not establish that no genuine issue of material fact remains as to age discrimination in the

administration of Ficken's 2002 Oral Assessment.  For this reason, the court denies the

defendants' motion for summary judgment as to the plaintiffs' age discrimination claim.

**b.    The Court Grants the Defendants' Motion for Summary Judgment
as to the Plaintiffs' Retaliation Claim**

To make out a prima facie claim of retaliation, a plaintiff must establish that he engaged

in a statutorily protected activity, that the employer took an adverse personnel action, and that a

causal connection existed between the two.  See *Brody*, 199 F.3d at 452; *Paquin v. Fed. Nat'l

Mortgage Ass'n*, 119 F.3d 23, 31 (D.C. Cir. 1997).

The defendants argue that there is no causal connection between Ficken's protected

activity and the adverse employment action.  The declarations of the four Examiners who

administered Ficken's 2002 Oral Assessment establish that none was aware of Ficken's prior

discrimination complaint against the State Department.  *See* Def.'s Mot., Ex. (Eisenbraun Decl.)

¶ 4; Ex. (Collins Decl.) ¶ 3; Ex. (Keeton Decl.) ¶ 3; Ex. (Leach Decl.) ¶ 4.  Absent any evidence

suggesting that the decisionmakers had knowledge of Ficken's protected activity, he fails to

make out a *prima facie* case of retaliation.  *See Buggs v. Powell*, 293 F. Supp. 2d 135, 150-51

(D.D.C. 2003).

19

## IV.    CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss or for

summary judgment in part and denies it in part.  An order directing the parties in a manner

consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th

day of January, 2006.


                                                    RICARDO M. URBINA
                                                  United States District Judge