**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |  |
|---|---|---|---|
| IVAN FICKEN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Civil Action No. | 04-1132  (RMU) |
| | ) | | |
| CONDOLEEZZA RICE, Secretary of | ) | Docket Nos.: | 71, 75 |
| State, *et al.*, | ) | | |
| | ) | | |
| Defendants. | ) | | |
| | ) | | |

**MEMORANDUM OPINION**

This matter is before the court on the motion to dismiss filed on behalf of Arnold Bieber,

the Board of Directors for the American International School of Bucharest, and the American

International School of Bucharest (collectively, the "AISB Defendants").  For the reasons

discussed below, the defendants' motion will be granted.[1]

I.  BACKGROUND

Plaintiff Ivan Ficken ("Ficken") and his son, Ciprian Ivanof ("Ivanof"), moved to

Romania during the summer of 2001.  Compl. ¶ 111.  Ficken explored the possibility of enrolling

Ivanoff in the eighth grade class at the American International School of Bucharest ("AISB") for

the 2001-02 school year.  *Id.* ¶ 114.  At that time, however, Ficken was unable to afford the

---

[1]      Also before the Court is Plaintiffs' Motion to Correct an Error or Oversight in the
Court's January 3, 2008 Orders.  Generally, the plaintiff asks that the Court direct the Clerk to
reissue summonses to and that the United States Marshals Service serve process on the AISB
defendants.  Because the defendants' motion to dismiss will be granted, the plaintiff's motion
must be denied.

tuition and no scholarships were available for eighth grade students. *Id.* Ficken proposed either that he pay a reduced tuition fee, or that Ivanof attend AISB on a "stand by" basis until such time as another student enroll in Ivanof's place at the full tuition rate, or that AISB admit Ivanof at no cost "on humanitarian grounds." *Id.* ¶ 118. When AISB staff rejected Ficken's proposals, he appealed to AISB's Board of Directors, *id.* ¶¶ 121-22, and the Board declined "to make an exception to the policy regarding scholarships." *Id.* ¶ 123. Ficken was informed that scholarships would be available for the 2002-03 school year for high school students, and that the applications would be "considered on their merits, taking into account any unusual circumstances." *Id.* ¶ 124. Instead, Ivanof attended a Romanian school for the 2001-02 school year, with allegedly disastrous consequences. *Id.* ¶¶ 125-26. Ivanof attended the Bucharest Christian Academy for the 2002-03 school year. *Id.* ¶¶ 134-35.

The plaintiff applied for Ivanof's admission to AISB and for a full scholarship for the 2003-04 school year. *Id.* ¶¶ 136-38. The application was rejected without granting Ivanof an interview because of the poor grades he earned during the previous school year at the Bucharest Christian Academy. *Id.* ¶ 138. Ficken's request to the Admissions Director for reconsideration was denied, as was his appeal to AISB's Director. *Id.* ¶ 153. Ficken was informed that scholarships would not be available for eleventh grade students for the 2004-05 school year, rendering Ivanof ineligible for scholarship consideration. *Id.* ¶¶ 155-56.

According to the plaintiff, AISB exists "expressly for the purpose of providing primary and secondary educational facilities for the school age dependents of personnel posted by the United States Department of State . . . overseas to Bucharest, Romania." Compl. ¶ 8. Dependents of United States government officials are given first priority of admission, "with

second priority . . . given to children of other Americans living in Bucharest, with third priority to children of other English speaking families and fourth priority to children from families of other countries." *Id.* Generally, the plaintiff alleges that the AISB defendants' rejection of the applications for Ivanof's admission on full scholarship has caused both father and son emotional distress. *See id.* ¶¶ 234, 245, 258. Further, the plaintiff charges that the AISB defendants discriminate against American scholarship applicants and instead award those scholarships to Romanian students. *See id.* ¶¶ 157-58.

Three Counts of the Complaint pertain to the AISB defendants. First, the plaintiff alleges that the AISB defendants breached an agreement with the plaintiff to consider an appeal of the decision not to admit Ivanof for the 2001-02 school year to the AISB's Board. Compl. ¶¶ 232-33 (Count XII). Second, the plaintiff alleges that the AISB defendants breached the school's "system of priorities in admission," that is, to give American students in Romania priority over other applicants, by rejecting their scholarship application for the 2003-04 school year. *See id.* ¶¶ 242-43 (Count XIV). Third, the plaintiff alleges that the AISB defendants retaliated against them by limiting scholarships for the 2004-05 school year to students entering the ninth and tenth grades, but not to students like Ivanof who then were entering the eleventh grade. *See id.* ¶¶ 256-57 (Count XVI).

## II. DISCUSSION

### *A. Personal Jurisdiction*[2]

The AISB defendants argue that the plaintiff fails to establish this court's personal

---

[2]     For purposes of this discussion, the court assumes without deciding that service of process on the AISB defendants was proper and declines to dismiss this action under the doctrine of *forum non conveniens*.

jurisdiction over them.  *See* Mem. of Points and Authorities in Support of Mot. to Dismiss ("AISB Mot.") at 3-5.  The plaintiff must set forth a factual basis for the court's exercise of personal jurisdiction over the defendants.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d. 454, 456 (D.C. Cir. 1990); *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) ("[T]he general rule is that a plaintiff must make a prima facie showing of the pertinent jurisdictional facts.").  To this end, the plaintiff must allege specific acts connecting the defendants with the forum, and any factual discrepancies in the pleadings and affidavits generally are resolved in the plaintiff's favor.  *See, e.g., Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (requiring the plaintiffs to allege specific facts connecting the defendants to the forum).  The court may consider documents outside the pleadings to assure itself that it has jurisdiction.  *See AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 73-74 (D.D.C. 2004).

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)).  Under the District of Columbia's long-arm statute, a court in the District of Columbia may exercise personal jurisdiction over a person outside of the District if the plaintiff's claim arises from the defendants' "transacting any business in the District of Columbia."  D.C. Code § 13-423(a)(1).  The "transacting any business" clause "generally has been interpreted to be coextensive with the Constitution's due process requirements and thus to merge into a single

inquiry." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d at 1347.

In order to show the AISB defendants' contacts to the District of Columbia, the plaintiff emphasizes AISB's ties to the State Department. *See, e.g.,* Compl. ¶¶ 5, 8; Pl.'s Opp'n to Def. Arnold Bieber, Director of, Board of Directors of[,] and American International School of Bucharest's [] Motion to Dismiss ("Pl.'s Opp'n") at 2-3. The plaintiff alleges that, since its founding in 1962, AISB "remains under the control of the United States Department of State's Office of Overseas Schools and/or other State Department personnel, specifically the American Embassy's Deputy Chief of Mission who . . . serves as Head or Chairperson of AISB's Board of Directors to ensure that the system of priorities of enrollment established by the [State Department] . . . remains intact." Compl. ¶ 5; *see* Pl.'s Opp'n at 2. In addition, the plaintiff asserts that AISB "is affiliated with and receives grant support from the U.S. Department of State's Office of Overseas Schools," and "receives an annual supporting financial grant from the [State Department]," such that the State Department "probably still remains the single heaviest contributor of tuition funds to AISB." Compl. ¶ 8; *see* Pl.'s Opp'n at 2. He asserts "that the single largest financier of AISB's operating expenses is the U.S. Government with its headquarters in Washington, DC, where due to most directly being subject to this Court's jurisdiction in exercising control over the flow of that finance stream, . . . it is this Court which most appropriately has jurisdiction and venue." Pl.'s Opp'n at 3. These factors, the plaintiff alleges, should prompt the court "to look through the facade which AISB and the State Department have created in terms of claiming that AISB is now an 'independent' institution . . . [and to] determine that for liability purposes, it still remains under the authority and control of the [State Department]." Compl. ¶ 128. The plaintiff also argues that AISB is a limited liability

company incorporated in the State of Delaware.  Pl.'s Opp'n at 1 & Attach. 1.  In his view,

"AISB affirmatively chose the forum in which it preferred any litigation should take place, i.e.

the United States, by incorporating in Delaware."  *Id.* at 10.

The AISB defendants counter that AISB "is a non-profit unincorporated educational

entity organized under the authority of the United States and the government of Romania."

Mem. of Points and Authorities in Support of Mot. to Dismiss ("AISB Mot."), Scarborough

Decl. ¶ 3.  Although the members of AISB's Board of Directors "are appointed by the United

States Ambassador to Romania, . . . AISB operates independently of the Romanian and American

governments."  *Id.* ¶ 4.  "AISB does not conduct any regular business in the District of Columbia

beyond incidental contacts with the Department of State by virtue of the membership of the AISB

Board."  *Id.* ¶ 10.

Earlier in these proceedings, the State Department established that neither it nor the

United States government regulates AISB's activities, including the hiring and firing of

employees or the setting of tuition rates.  Mem. in Support of Def. Rice's Mot. to Dismiss, or in

the alternative, for Summ. J. [#12], Miller Decl. ¶ 5.  However, the State Department awards

AISB an annual grant for a specific purpose, for example, to purchase textbooks or to upgrade

security.  *Id.* ¶¶ 6-7.

Whether a defendant has established "minimum contacts" with the District of Columbia

turns on whether the exercise of jurisdiction would "offend traditional notions of fair play and

substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation

marks omitted).  These minimum contacts must arise from "some act by which the defendant[s]

purposefully avail[] [themselves] of the privilege of conducting activities with the forum state,

thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  In other words, "the defendant[s'] conduct and connection with the forum State [must be] such that [they] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The court is not persuaded that the AISB defendants have established minimum contacts with the District of Columbia of such depth or magnitude that the exercise of personal jurisdiction over them is proper.  Nothing in the record indicates that the AISB defendants reside or conduct business in the District of Columbia.  *See* Scarborough Decl. ¶ 10.  Rather, the record shows that AISB is located in Bucharest, Romania and operates there under the direction of its Board to which the school's Director reports.  *See id.* ¶¶ 5-6.  The fact that AISB is incorporated in the State of Delaware does not establish that the District of Columbia is the proper forum in which to adjudicate the plaintiff's claims.  Nor are the AISB defendants' contacts with the State Department a sufficient basis for this court's exercise of personal jurisdiction.  *See Chrysler Corp. v. General Motors Corp.*, 589 F. Supp. 1182, 1196 (D.D.C. 1984) (recognizing a "government contacts" exception to personal jurisdiction such that "a defendant's relationships with federal agencies do not enter the calculus of minimum contacts with the District of Columbia for jurisdictional purposes"); *cf. Kauffman v. Anglo-Am. Sch. of Sofia*, No. 89-3419, 1992 WL 200025, at *2-4 (D.D.C. July 20, 1992), *aff'd*, 28 F.3d 1223 (D.C. Cir. 1994) (concluding that the government was not liable for actions of school established in 1967 to provide elementary education for children of American and British diplomats stationed in Sofia, Bulgaria, notwithstanding its receipt of funding from the federal government and appointment by

United States Ambassador of three members of the Board of Directors).

### B.  Subject Matter Jurisdiction

The AISB defendants argue in the alternative that this court lacks subject matter jurisdiction.  *See* AISB Mot. at 5-8.  The court concurs that the plaintiff's claims do not arise under the Constitution, laws or treaties of the United States, and for this reason there is no federal jurisdiction.  The court accepts the plaintiff's representations that he and his son are "citizens of the State of Wisconsin," Compl. ¶ 7, and that the amount in controversy exceeds $75,000.  At this juncture, it appears that the plaintiff establishes diversity jurisdiction.  Accordingly, the court will deny without prejudice the AISB defendants' motion to dismiss for lack of subject matter jurisdiction.

### III.  CONCLUSION

Assuming without deciding that service of process on the AISB defendants was proper, the court concludes that it lacks personal jurisdiction over them.  Accordingly, the court will grant the AISB defendants' motion to dismiss, will dismiss them as party defendants and will dismiss all claims against them.  An Order accompanies this Memorandum Opinion.

_____/s/_____
RICARDO M. URBINA
United States District Judge

Date:  February 1, 2009

8