UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| IVAN FICKEN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1132 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 102 |
| | : | | |
| HILLARY RODHAM CLINTON, | : | | |
| Secretary of the United States | : | | |
| Department of State *et al.*, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

GRANTING THE DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

The *pro se* plaintiff commenced this action against the Department of State based on his non-selection for a position with the Foreign Service, asserting various claims of employment discrimination including violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. The court previously granted the defendant's motion to dismiss the majority of the plaintiff's claims. At this juncture, the only claims remaining before the court are the plaintiff's claims of disparate impact and disparate treatment based on age. More specifically, the plaintiff claims that the Oral Assessment portion of the Foreign Service Exam ("the Oral Assessment"), which the defendant uses to identify qualified candidates to serve as Foreign Service Officers, is biased against older candidates.

The matter is now before the court on the defendant's motion for partial summary

judgment as to the plaintiff's disparate treatment claim.[1] Because the plaintiff has failed to offer sufficient evidence to rebut the defendant's legitimate, non-discriminatory reason for his non-selection, the court grants the defendant's motion.

## II. FACTUAL & PROCEDURAL BACKGROUND[2]

In November 2000, the plaintiff applied to be a Foreign Service Officer. Compl. ¶ 11. The initial step in the application process required applicants to pass the Foreign Service Written Exam ("FSWE"), which included both multiple-choice and essay questions. *Id*. ¶ 10. Only those candidates who received a passing score on both the multiple-choice and essay questions continued to the third stage of the hiring process, the Oral Assessment. *Id.*

In November 2000, at the age of fifty-seven, the plaintiff first took the FSWE for the first time. *Id.* ¶ 11. Although he received a passing score on the multiple-choice portion of the exam,

---

[1] The defendant styles its motion as a motion for summary judgment. *See generally* Def.'s Mot. In its motion, however, the defendant only addresses the plaintiff's disparate treatment claim. *See generally id.* Although the plaintiff's complaint does not explicitly set forth a disparate impact claim, the plaintiff's factual allegations make clear that he believes that the Oral Assessment is designed to have a disproportionate adverse impact on candidates based on their age. *See* Compl. ¶ 51 (asserting that the Oral Assessment is "Age Discriminatory by design" because "[i]t was specifically designed to cancel out any experience which an older person might have"); *see also Ricci v. DeStafano*, 129 S. Ct. 2658, 2672-73 (2009) (observing that a plaintiff seeking to establish a prima facie case of disparate impact must show that a facially neutral employment policy has a disproportionately adverse effect on a protected class of people (internal citations omitted)). Indeed, the defendant's own submissions suggest that it was aware that the plaintiff had raised a disparate impact claim. *See* Def.'s Mot., Ex. 3 (Decl. of Arthur F. Salvaterra, Director of the Board of Examiners for the Foreign Service, U.S. Department of State) ¶ 12 (asserting that "[t]he oral assessment does not have a *disparate impact* on any group of individuals, especially those over the age of 40" (emphasis added)). Because the factual allegations that the plaintiff assert were sufficient to put the defendant on notice as to such a claim, the court construes the plaintiff's complaint so as to include a disparate impact claim. Thus, the court will treat the defendant's motion as a motion for partial summary judgment and grant leave to the parties to file motions for summary judgment with regard the plaintiff's disparate impact claim.

[2] The factual background of this case was discussed in greater detail in the court's previous memorandum opinion. *See* Mem. Op. (Jan. 17, 2006). The relevant facts are repeated here for convenience.

*id.* ¶ 15, his "essay was not given a passing score," *id.* ¶ 16. In August 2001, the plaintiff took the FSWE again, this time achieving a passing score on both the multiple-choice and essay portions of the exam. *Id.* ¶¶ 20, 21.

Accordingly, in April 2002, the plaintiff underwent the Oral Assessment component of the exam. Def.'s Mot., Ex. 1 ("Pl.'s Dep.") at 14. "The Oral Assessment is performed on one day, in three stages." Def.'s Mot., Ex. 6 (Decl. of Russell Keeton, Examiner in the Office of Recruitment, Examinations, and Employment at the U.S. Department of State ("Keeton Decl.")) ¶ 6. "Four Examiners . . . evaluate and rate [each] candidate[] from 1-7 in thirteen dimensions in each of three modules." *Id.*, Ex. 3 (Decl. of Arthur F. Salvaterra, Director of the Board of Examiners for the Foreign Service, U.S. Department of State ("Salvaterra Decl.")) ¶ 7. These three modules are "the group exercise, the case management study, and a structured interview." *Id.* ¶ 6. The modules are described as follows:

> The Group Exercise consists of a maximum of six candidates who are required to present their individual projects and engage in a discussion and a consensus building effort that results in a collective action memo to the Ambassador. The characteristics that Examiners are looking for in this exercise are: oral communication, objectivity and integrity, ability to work with others, information integration and analysis, planning and organization, judgment, initiative and leadership, and composure.
>
> The Case Management Study presents the candidate with the challenge of reading through numerous documents, sifting out what is important, and writing a solution to a management problem. The characteristics that Examiners look for in this exercise are: information integration and analysis, judgment, resourcefulness, written communication, and quantitative analysis.
>
> The Structured Interview is the portion of the examination in which two examiners interview the candidate. The candidate has the opportunity to talk about [himself] and to relat[e] past experiences to the Foreign Service and to solv[e] problems in a Foreign Service setting. The characteristics tested here are basically similar to those tested in the previous two exercises.

*Id.* ¶¶ 8-10.

Candidates receive the results of the Oral Assessment during an exit interview. *Id.* ¶ 11. The passing score is 5.25 out of a possible score of 7 for each module of the Oral Assessment; the lowest available score is a 1. *Id.* ¶ 7. "The candidacy of anyone whose score is below the passing level will be terminated and may not be considered again until the candidate has passed a new written examination." Def.'s Mot., Ex. 8 at 13.

At the time the plaintiff underwent the Oral Assessment, the candidates were divided into two groups for the Group Exercise module. Compl. ¶ 29. Each member "received a written explanation of a project . . . [on] which . . . the candidate was supposed to brief the other members of the group[,] followed by an advocacy stage during which the candidate [was] supposed to advocate the full funding of [his] project." *Id.* The advocacy stage was then followed by "a negotiation phase during which limited funding constraints imposed restrictions upon which projects could be totally or partially funded." *Id.* The plaintiff's project involved "providing 'Human Rights sensitivity training' for senior military officials in an underdeveloped country who were primarily responsible for the abuses which the country had in the area of Human Rights." *Id.* According to the plaintiff, his "26 years experience . . . in the Naval Reserve which included many joint exercises with military personnel from other countries . . . has proven . . . beyond any doubt that a foreign military official . . . will view a temporary duty assignment in the U.S. . . . as merely an opportunity to buy all the consumer goods at the local military exchange that he and his family have dreamed about for decades, with the so-called 'training' that he is being sent to, having no significance or impact on him whatsoever." *Id.* The plaintiff received "a particularly low grade in the group exercise," and he himself attributes the low score to "his failure to effectively advocate for a project which he was given (and which his

many years of experience in the real world told him, beyond any doubt, would be a waste of money)." *Id.* ¶ 30.

During the Structured Interview module, the plaintiff was asked about his work history because "the statement of work history covering [the plaintiff's prior] ten years was blank." *Id*. ¶ 31. The plaintiff explained "that it was due to having lost his job with the [Small Business Administration] due to illegal retaliation from one office director against whom the plaintiff had filed multiple EEO and retaliation complaints." *Id.* The plaintiff speculated that his lack of work history for the prior 10 years had been "viewed negatively," while "no such negative perception would be attributable to a recent (and far younger) college graduate who . . . might also have a 'blank' work history for the last ten years." *Id.*

The plaintiff received the following failing scores: 3.6 for the Group Exercise, 4.2 for the Case Management Study, and 4.2 for the Structured Interview, for a total overall score of 4. Def.'s Mem., Ex. 9. Because his scores fell below the passing score for each module, the Department of State terminated the plaintiff's candidacy. *Id.*

The plaintiff then filed an EEO complaint with the Department of State, alleging, *inter alia*, that his failure to pass the Oral Assessment was due to age discrimination. Def.'s Mot., Ex. 2. The plaintiff subsequently filed this suit, asserting that "the Oral Assessment is Age Discriminatory by design" because "[i]t was specifically designed to cancel out any experience which an older person might have and . . . [the State Department refuses] to accept any verification of competence or experience which was not specifically requested by their paperwork or delved into by their questions during the structured interview phase of the Oral Assessment." Compl. ¶ 35.

In April 2005, the defendant moved to dismiss, or, in the alternative, for summary judgment. *See generally* Def.'s Mot. to Dismiss or for Summ. J. ("Def.'s Mot."). On January 17, 2006, the court granted the defendant's motion in part, resolving all but the plaintiff's age discrimination claims with respect to the 2002 Oral Assessment. *See generally* Mem. Op. (Jan. 17, 2006).

The defendant has now filed a motion for partial summary judgment on the plaintiff's remaining disparate treatment age discrimination claim. *See generally* Def.'s Mot. With that motion ripe for adjudication, the court turns to the parties' arguments and the applicable legal standards.

### III. ANALYSIS

#### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B. The Court Grants the Defendant's Motion for Partial Summary Judgment on the Plaintiff's Disparate Treatment Claim

#### 1. Legal Standard for Disparate Treatment Under ADEA

When the defendant in a Title VII or ADEA case presents a legitimate, non-discriminatory reason for its actions,[3] the district court need resolve only one question to adjudicate a motion for summary judgment: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the

---

[3]   In those rare cases in which the defendant fails to present a legitimate, non-discriminatory reason for its actions, the court must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (noting that once the defendant presents a legitimate non-discriminatory reason "the *McDonnell Douglas* framework . . . disappears, and the sole remaining issue is discrimination *vel non*") (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973)); *see also Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (explaining that "the prima facie case is a largely unnecessary sideshow").

actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998)). The plaintiff need not present evidence in each of these categories to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### 2. The Plaintiff Has Failed to Rebut the Defendant's Legitimate, Non-Discriminatory Justification for the Plaintiff's Non-Selection

The defendant argues that the plaintiff failed the Oral Assessment because he did not pass any of the three modules and did not demonstrate the abilities required to perform the work of a Foreign Service Officer. Def.'s Mot. at 8; Def.'s Reply at 2 n.1. The defendant specifically cites the plaintiff's performance in the Group Exercise module, in which the plaintiff failed to advocate and negotiate for his assigned program, as one reason for not selecting the plaintiff. Def.'s Mot. at 8. According to the defendant, a candidate's "failure in any one of the three modules mandates termination of a candidacy." Def.'s Reply at 1.

Accordingly, the defendant has asserted a legitimate, non-discriminatory reason for the plaintiff's non-selection. *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 655 (D.C. Cir. 2003) (stating the "two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought"). The court thus turns to consider whether, in light of the total circumstances

8

of the case, the plaintiff "has produced evidence for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated" against the plaintiff on the basis of his age. *See Brady*, 520 F.3d at 495.

Although far from a model of clarity, the plaintiff's opposition suggests that discriminatory intent can be inferred from his own assessment of his qualifications and his statistical analysis of the passage rates of older candidates who took the Oral Assessment exam. The plaintiff maintains that the scores he received were "virtually diametrically opposite from what are [his] true strengths and weaknesses" and that "some of the graded traits [were] ridiculously out of line in terms of what [he] know[s] to be true." Pl.'s Opp'n at 26. Yet a plaintiff's personal evaluation of his own qualifications and performance is insufficient to rebut a defendant's legitimate, non-discriminatory reason for his non-selection. *See, e.g.*, *Jo v. Dist. of Columbia*, 582 F. Supp. 2d 51, 62-63 (D.D.C. 2008) ("Although Plaintiff clearly values his own credentials and experiences, a plaintiff's subjective assessment of his own record is largely irrelevant."); *Spelke v. Gonzales*, 516 F. Supp. 2d 76, 80-81 (D.D.C. 2007) (noting that the "plaintiff's subjective self-assessment [of his qualifications] does not defeat defendant's offering 'legitimate, nondiscriminatory reason' for the non-selection of plaintiff"). Accordingly, a reasonable juror could not infer discriminatory intent from the plaintiff's evaluation of his own abilities.

The plaintiff also offers statistical evidence to support his opposition to the defendant's motion for summary judgment. *See* Pl.'s Opp'n at 36-39. More specifically, the plaintiff submits mathematical calculations, which he argues show that there is a statistically significant difference between the passage rates of those candidates who are older than forty years old and those who are younger than forty years old. *See id.*

9

Although statistical evidence may be considered in determining whether an employer has unlawfully discriminated against an individual employee, statistical evidence is ordinarily not dispositive in the disparate treatment context. *Krodel v. Young,* 748 F.2d 701, 710 (D.C. Cir. 1984) (observing that statistical evidence is less significant in the individual disparate treatment context than in disparate impact and class-wide disparate treatment cases). Indeed, statistical evidence standing alone is "insufficient to create an inference of disparate treatment" in individual disparate treatment actions. *Simpson v. Leavitt,* 437 F. Supp. 2d 95, 104 (D.D.C. 2006) (concluding that statistical evidence of discrimination is "not conclusive [in a disparate treatment case] and will instead serve to 'add color' "to a claim of discrimination, presuming other evidence exists to give rise to an inference of discrimination); *see also Horvath v. Thompson,* 329 F. Supp. 2d 1, 10 (D.D.C. 2004) (noting that "statistical evidence is only one small part of a substantial web of evidence indicating pretext" (quoting *Bell v. Envtl. Prot. Agency,* 232 F.3d 546, 553 (7th Cir. 2000))).

Assuming *arguendo* that the plaintiff's calculations are valid,[4] the plaintiff has offered no other evidence giving rise to an inference of age discrimination. *See generally* Compl.; Pl.'s Opp'n. Indeed, the plaintiff concedes that he "was given a particularly low grade in the group exercise, undoubtedly for his failure to effectively advocate for the project which he was given." Compl. ¶ 30. Accordingly, the court grants summary judgment to the defendant with respect to the plaintiff's disparate treatment claim. *See Simpson*, 437 F. Supp. 2d at 104 (granting summary judgment to the defendant despite the plaintiff's statistical evidence of racial

---

[4] At this juncture, the court declines any attempt to make sense of the plaintiff's mathematical calculations, which are unaccompanied by any clear explanation of relevance or reliability. *See* Pl.'s Opp'n at 37-39. The court notes, nonetheless, that the plaintiff's statistics fail to control for variables other than age, thereby limiting the usefulness of his statistical analysis. *See Aguilar v. Salazar*, 626 F. Supp. 2d 36, 41 (D.D.C. 2009) (determining that a statistical analysis was "fundamentally flawed" and could not be used to support pretext because the individuals studied did not provide a relevant basis of comparison to the plaintiff).

discrimination because there was no other evidence from which a reasonable juror could infer discrimination and the statistical evidence was not enough); *Davis v. Ashcroft*, 355 F. Supp. 2d 330, 343 (D.D.C. 2005) (granting summary judgment to the defendant because statistical evidence is "ordinarily not dispositive" in a disparate treatment case where "the ultimate issue is whether the *particular* plaintiff was the victim of an illegitimately motivated employment decision") (citing *Krodel*, 748 F.2d at 709)); *compare Talavera v. Fore*, 648 F. Supp. 2d 118, 134 (D.D.C. 2009) (granting summary judgment to the employer notwithstanding statistical evidence showing a "tendency toward male promotion" because the other evidence proffered by the plaintiff – an ambiguous stray remark by a non-decisionmaker regarding the strong bond between male employees and the destruction of the employer's notes regarding the plaintiff's interview - was insufficient to allow a reasonable juror to infer discriminatory motives) *with Jones v. Mukasey*, 565 F. Supp. 2d 68, 78 (D.D.C. 2008) (denying summary judgment because evidence of a statistically significant deviation between the hiring of African-American and white applicants, in conjunction with other evidence, raised an issue of pretext).

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for partial summary judgment. An Order accompanies this Memorandum Opinion is separately and contemporaneously issued this 24th day of March, 2011.

RICARDO M. URBINA
United States District Judge