**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| IVAN FICKEN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1132 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 113 |
| | : | | |
| HILLARY RODHAM CLINTON, | : | | |
| Secretary of State, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**G**RANTING THE **D**EFENDANT'S **M**OTION FOR **S**UMMARY **J**UDGMENT

## I. INTRODUCTION

The *pro se* plaintiff commenced this action against the Secretary of State based on his non-selection for a position with the Foreign Service, and asserts various claims of employment discrimination, including violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* The court previously dismissed the bulk of the plaintiff's claims, including his disparate treatment claim. At this juncture, the only remaining claim is the plaintiff's disparate impact claim. More specifically, the plaintiff alleges that the defendant has designed the oral portion of the Foreign Service Officer examination to favor younger candidates, resulting in an adverse disparate impact on older candidates. Because a reasonable juror could not conclude based on the evidence presented that the Foreign Service Officer examination has a disproportionate adverse effect on older candidates, the court grants the defendant's motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

In November 2000, the plaintiff applied to be a Foreign Service Officer with the

Department of State.  Compl. ¶ 11. The initial step in the application process at that time required

applicants to pass the Foreign Service Written Exam ("FSWE"), which included both multiple-

choice and essay questions.  *Id*. ¶ 10.  Only those candidates that received a passing score on

both the multiple-choice and essay questions continued to the third stage of the hiring process:

the Oral Assessment.  *Id.*

In 2000, the plaintiff, at the age of 57, first took the FSWE and failed.  *Id.* ¶¶ 11, 16.  At

the time, he believed that the sections "were timed extremely tightly" and was unable to

complete the exam.  *Id.* ¶ 12.  After taking the FSWE again in 2001, the plaintiff, at the age of

58, passed both the multiple-choice and essay portions and later underwent the Oral Assessment

in April 2002.  Def.'s 1st Mot. for Summ. J., Ex. 2 ¶¶ 26.

The 2002 Oral Assessment included three modules: "the group exercise, the case

management study, and a structured interview."  *Id.*, Ex. 3 ¶ 6.  Candidates received the results

of the Oral Assessment during an exit interview.  *Id.* ¶ 11.  The passing score was 5.25 for each

module of the Oral Assessment.  *Id*. ¶ 7.  Any applicant who scored below the passing level was

dismissed and could not retake the Oral Assessment until the applicant had again passed the

written portion of the FSWE.  *Id.*, Ex. 8 at 4.  The plaintiff received failing scores for each

module, and the defendant subsequently terminated the plaintiff's application process.  *Id*., Ex. 9.

In July 2004, the plaintiff filed the instant suit.  *See generally* Compl.  According to the

plaintiff, "the Oral Assessment is Age Discriminatory by design" because "[i]t was specifically

designed to cancel out any experience which an older person might have and . . . [the State

---

[1]   The background of this case is laid out in greater detail in the court's previous Memorandum
Opinion.  *See* Mem. Op. (Mar. 25, 2011) at 2-6.  Those facts that are relevant here, however, are
repeated for convenience.

Department refuses] to accept any verification of competence or experience which was not specifically requested by their paperwork or delved into by their questions during the structured interview phase of the Oral Assessment." *Id.* ¶ 51; *see also* Pl.'s Opp'n to Def.'s 1st Mot. for Summ. J. at 29.

On June 30, 2010, the defendant moved for summary judgment as to the plaintiff's disparate treatment claim. *See generally* Def.'s 1st Mot. for Summ. J. Although the court granted the defendant's motion with respect to the plaintiff's disparate treatment claim, the court noted that the plaintiff had also alleged a disparate impact claim. *See* Mem. Op. (Mar. 25, 2011) at 2 n.1. This disparate impact claim was based on allegations that the Oral Assessment was designed to have a disproportionate impact on older candidates. *See* Compl. ¶ 51. Because the defendant's motion failed to address the disparate impact claim, the court granted leave for parties to file dispositive motions as this unaddressed claim. *See* Mem. Op. (Mar. 25, 2011) at 2 n.1.

The defendant has now filed a second motion for summary judgment to address the plaintiff's disparate impact claim. *See generally* Def.'s 2d Mot. for Summ. J. The plaintiff opposes this motion.[2] *See generally* Pl.'s Opp'n to Def.'s 2d Mot. for Summ. J. With that motion now ripe for adjudication, the court turns to the parties' arguments and the applicable legal standards.

---

[2]     The plaintiff filed a "motion for permitting this case to proceed as an age discriminatory disparate impact claim." *See generally* Pl.'s Opp'n to Def.'s 2nd Mot. for Summ. J. It is clear, however, that this filing was intended to respond to the defendant's motion for summary judgment as to the disparate impact claim. Through this filing, the plaintiff asks the court to allow his case "to proceed to trial." *Id.* at 22. As such, the court construes and treats the plaintiff's "motion" as an opposition to the defendant's motion for summary judgment.

# III.  ANALYSIS

## A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *cert. denied*, 484 U.S. 1066 (1988); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995), *aff'd*, 132 F.3d 1481 (1997).  To determine which facts are "material," a court must turn to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" exists when the resolution of a material fact could establish an element of a claim or defense and, therefore, affect the action's outcome.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose

of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

## B. Legal Standard for Disparate Impact

To establish a prima facie case of disparate impact, the plaintiff must show that a facially neutral employment policy has a disproportionately adverse effect on a protected class of people.[3]  *See Ricci v. DeStafano*, 129 S. Ct. 2658, 2673 (2009) (citing 42 U.S.C. § 2000e-2(k)(1)(A));  *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)), *aff'd*, 530 F.3d 87 (2d Cir. 2008).  To do so, the plaintiff must first identify the specific employment practice challenged. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).  Next, the plaintiff must establish causation; "that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id.*; *see also Ricci*, 129 S. Ct. at 2678 (observing that a prima facie case of disparate impact requires "a threshold showing of a significant statistical disparity" (citing *Conn. v. Teal*, 457 U.S. 440, 446 (1982))).

To make the requisite showing of causation for a disparate impact claim under the ADEA, a plaintiff "need not offer evidence that the employer's action was the result of discriminatory intent, but need only offer statistical evidence of a kind and degree sufficient to show the employment decision disproportionately impacts older employees." *Aliotta v. Bair*, 614 F.3d 556, 565 (D.C. Cir. 2010).  This statistical evidence is often demonstrated by using a

---

[3]  In *Smith v. City of Jackson, Miss.*, the Supreme Court held that the ADEA creates a cause of action under a disparate impact theory because the language prohibiting discriminatory conduct tracked the language of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  544 U.S. 228, 233-40 (2005).  Accordingly, the court is guided by the principles found in case law related to Title VII disparate impact claims when analyzing the plaintiff's ADEA disparate impact claim.

standard deviation analysis that is designed to measure the statistical significance of disparities between expected and actual selection rates of applicants from a protected group. *See, e.g.*, *Anderson v. Zubieta*, 180 F.3d 329, 339-40 (concluding that a standard deviation of 1.96 or higher indicates "a level of statistical significance . . . sufficient to establish a prima facie case of both disparate treatment and disparate impact"). Whatever the method of analysis, the plaintiff must demonstrate the existence of a statistical disparity significant enough to give rise to an inference of discrimination. *See Palmer v. Schultz*, 815 F.2d 84, 91 (D.C. Cir. 1987) (observing that "if the disparity between selection rates for men and women is sufficiently large so that the probability that the disparities resulted from chance is sufficiently small, then a court will infer from the numbers alone that, more likely than not, the disparity was a product of unlawful discrimination" (citing *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08 (1977))); *see also Albermarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975). Indeed, "[s]tatistical evidence is *crucial* in disparate impact cases, where plaintiffs need not prove discriminatory intent but must show that specific employment practices 'select [some applicants . . . in a . . . pattern significantly different from that of the pool of applicants.'" *Krodel v. Young*, 748 F.2d 701, 710 (D.C. Cir. 1984) (emphasis added) (quoting *Albermarle Paper Co.*, 422 U.S. at 425)).

### C. The Court Grants the Defendant's Motion for Summary Judgment

The plaintiff alleges that "the administration of the State Department's Oral Assessment [is] a process which severely and illegally discriminates against older candidates," Compl. ¶ 28, and that the Oral Assessment "was specifically designed to cancel out any experience which an older person might have," *id*. ¶ 51; *see also* Pl.'s Opp'n to Def.'s 1st Mot. for Summ. J. at 30

(alleging that the exam's consideration of an applicant's prior ten-year employment history "shows a bias toward a younger applicant").

Insofar as these allegations raise a disparate impact claim, the defendant argues that summary judgment should be granted in its favor because the plaintiff has "refused to provide [statistical] evidence to the Court" to show that the Oral Assessment has a disproportionately adverse effect on older individuals. Def.'s Reply at 7. Specifically, the defendant avers that the plaintiff has not provided "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applica[nts] for jobs or promotions because of [their] membership in the protected class." Def.'s 2d Mot. for Summ. J. at 6. The defendant further argues that the plaintiff's claim must fail because 63% of Foreign Service officers are over the age of 40, indicating that the Department of State does not discriminate against older professionals. *Id.* at 6-7.

In response, the plaintiff submits that his disparate impact claim is adequately supported by the calculations that he put forth in his opposition to the defendant's first motion for summary judgment. *See* Pl.'s Opp'n to Def.'s 2d Mot. for Summ. J. at 14-16; Pl.'s Opp'n to Def.'s 1st Mot. for Summ. J. at 36-39; Def.'s 1st Mot. for Summ. J., Ex. 10. In preparing these calculations, the plaintiff first determined the percentage of candidates who were scheduled to take the Oral Assessment in 2002 and who were born before April 8, 1962 (or, in other words, were over 40 years old). Pl.'s Opp'n to Def.'s 1st Mot. for Summ. J. at 37. The plaintiff concluded that 523 applicants were older than 40 and 3184 applicants were younger than 40, equaling 3707 applicants in total. *Id.* at 38. The plaintiff then noted that only 3150 applicants – not 3707 applicants – actually participated in the Oral Assessment, and despite this discrepancy in his calculations, continued with his analysis. *Id.* at 38 n.4. Finally, the plaintiff attempted to

7

show that a statistically significant difference exists between the number of older applicants passing the Oral Assessment and the number of younger applicants doing the same.  *Id*. at 38-39. He concludes now, "ANY way that [the raw pass/fail data is] interpreted will demonstrate that the pass rate for each age group gets progressively worse the older the group is."  Pl.'s Opp'n to Def.'s 2d Mot. for Summ. J. at 15.

In determining whether the plaintiff has established a prima facie case, the court is sensitive to the proposition that "statistics 'come in infinite variety and . . . their usefulness depends on all of the surrounding facts and circumstances.'" *Watson*, 487 U.S. at 995.  As such, the plaintiff must, at the very least, provide methodologically sound statistics based on valid data that show a statistically significant disparity indicating that a disparate impact likely exists.  *See Segar v. Smith*, 738 F.2d 1249, 1268 (D.C. Cir. 1984) ("Typically the challenge will focus on the integrity of the plaintiffs' statistical methodology and the significance of the results shown.").

In its March 2011 memorandum opinion, the court noted that the plaintiff's statistics appeared flawed or lacking in several respects.  *See* Mem. Op. (Mar. 25, 2011) at 10 n.4.  More specifically, the court noted that the plaintiff failed to explain his method for deriving the figures and did not control for extraneous variables in performing his calculations.  *Id*.  Indeed, the plaintiff himself admitted that he did "[n]ot realize what criteria DOS used for their count," "didn't have adequate remaining time to finish [the corrections to his calculations]," and could not "fine tune" his numbers.  Pl.'s Opp'n to Def.'s 1st Mot. for Summ. J. at 38 n.14. Nevertheless, the plaintiff concluded that "[o]ne does not have to be a statistician to realize that the ever (and dramatically) decreasing pass rate for groups over the age [of] 40 . . . is statistically significant."  *Id.* at 39 (internal quotation marks omitted); *see also* Pl.'s Opp'n to Def.'s 2d Mot. for Summ. J. at 14-16.

In his opposition to the defendant's second motion for summary judgment, the plaintiff reaffirms his confidence in his original calculations without addressing the court's iterated concerns about those calculations or the discrepancy between his "total" number of applicants and the actual number of applicants taking the exam. *See* Mem. Op. (Mar. 25, 2011) at 10 n.4 (noting that the plaintiff failed to explain his method and to control for extraneous variables). In short, the plaintiff has not clarified or otherwise explained his calculations.[4] Pl.'s Opp'n to Def.'s 2d Mot. for Summ. J. at 14-16.

Even assuming *arguendo* that the calculations the plaintiff provides are correct, he nonetheless fails to offer any measure of statistical significance. Pl.'s Opp'n to Def.'s 1st Mot. for Summ. J. at 36-39. As such, he never addresses the probability that any alleged disparity in his calculations exists by chance. *See Segar*, 738 F.2d at 2383. As the Circuit has indicated, "[t]he notion of statistical significance addresses directly the question whether an inference of discrimination is warranted. Statistical significance is a measure of the *probability* that the outcome of a statistical analysis would have occurred by chance . . . ." *Id.* (emphasis added).

Without more, the court must conclude that a reasonable fact finder would not credit the plaintiff's calculations or his poorly supported conclusion. *See Onyewuchi v. Mayorkas*, 766 F. Supp. 2d 115, 134 (D.D.C. 2011), *aff'd*, U.S. App. LEXIS 24211 (D.C. Cir. Dec. 2, 2011) (stating that a failure to control for extraneous variables or explain baseline calculations rendered the plaintiff's calculations "simplistic [and] irrelevant" and insufficient to make out a prima facie case of disparate impact). Because the plaintiff has failed to produce any evidence from which a reasonable jury could find that age – and not his performance on the Oral Assessment – was the

---

[4]     The plaintiff had two opportunities to supply this court with calculations to support his disparate impact claim. The court further notes that the plaintiff has not sought leave to file a sur-reply or made any filing explaining his calculations since the defendant's second summary judgment motion was filed.

reason for his non-selection, the court grants summary judgment for the defendant on the plaintiff's claim of age discrimination based on disparate impact.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's second motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 23rd day of January, 2012.

RICARDO M. URBINA
United States District Judge